Filed 7/18/23  In re Alonso M. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re ALONSO M., a Person Coming Under the Juvenile Court Law. | B319985 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. A.M., Defendant and Appellant. | (Los Angeles County Super. Ct. No. 22CCJP00607A) |

APPEAL from orders of the Superior Court of Los Angeles County.  Hernan D. Vera, Judge.  Affirmed.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica Buckelew, Deputy County Counsel, for Plaintiff and Respondent.

————————————

We affirm the trial court's orders finding jurisdiction and removing Alonso M. from A.M.'s (Father) custody. Because Father engaged in multiple acts of domestic violence while taking no steps to address the risk of recurrence, the trial court's orders regarding jurisdiction and removal had support in the record. We affirm.

## BACKGROUND

### I. Initial investigation, removal and detention

Alonso M. is nine years old, and his parents are mother S.O. (Mother) and Father.

On January 11, 2022, the Los Angeles County Department of Children and Family Services (DCFS) received an anonymous referral to the child protective hotline. According to the caller on the evening of December 28, 2021, Mother and Father physically fought. Alonso M. saw Father choking Mother, and she was losing consciousness. Alonso M. saw Mother with a bite mark on her chin and Father with a bite mark on his chest, both parents were bleeding, and the injuries were not present before the domestic altercation. Alonso M. reported that Father threatened Mother with a gun, and there were four or five guns in the home. Alonso M. said that he had seen his parents physically fight on multiple occasions.

On January 11, 2022, DCFS spoke with Alonso M.'s school psychologist. The psychologist reported having the "same concerns" as DCFS, but the report does not specify the nature of those concerns. The psychologist reported that Alonso M. said that his parents broke up on December 28, 2021, and that Father moved out that day. The December 28, 2021 date was the same date that the anonymous caller indicated that a physical fight

took place in the home, but the school psychologist did not discuss any potential domestic violence in the home.

On January 13, 2022, DCFS spoke to Alonso M. As reported by Alonso M., his parents do not physically abuse or physically discipline him. He feels safe in his home with his parents. He also said, " 'I'm afraid my dad will hurt my mom again.' " His parents yell at each other when they get mad, and Father punches things when he gets upset. He further said, " 'One time, my dad got mad and choked my mom. He bit her, and she bit him back.' " In addition, Alonso M. stated, " 'I saw my mom on her bed. . . . She looked like she couldn't see. I kept telling my dad to call the ambulance for both of them. My dad didn't call the ambulance. I saw my dad punched the TV. I was asleep, and I woke up, and my dad was screaming.' " He had seen his parents fight many times without specifying if the fights were physical, and this was the first domestic violence incident he saw between his parents. He summarized the incidents as follows: " 'I only saw him choke her one time, push her two times, and I never seen him punch her.' " In addition, Father got a gun because Mother was talking to another man, and there were five guns in the home with three in Mother's bedroom and two in the kitchen. Father told him that Father had killed a friend with a gun.

DCFS spoke to Mother on January 14, 2022. According to Mother, this was the first domestic violence incident between Father and her. She stated, " 'He just grabbed me, and then he left.' " Father never hit her or bit her, and she did not bite him. In addition, the mark on her neck was a scratch, and there were no weapons in the home. Mother, Father, and Alonso M. had resided together. However, Mother agreed to a voluntary safety

plan where the child was to live with the maternal grandmother for seven days.  Mother elected not to seek a restraining order when DCFS asked.  DCFS also offered to provide Mother with information regarding restraining orders when Mother was interested.

On January 25, 2022, DCFS spoke to Father.  Father stated, " 'Nothing happened.  There was no domestic violence incident, never.' "  He said he and Mother had verbal arguments.  He elaborated, " 'Maybe I've punched a wall or two.' "  He said there were no firearms in the home except for a gun registered to Mother, which was locked in a safe.  He declined anger management courses.  Father said he sleeps in his shop.  He explained that he only stopped by the home at night and in the morning to greet Alonso M. and to sometimes take Alonso M. to school.

On January 31, 2022, DCFS spoke to Mother and Alonso M. in the family home.  The social worker saw a hole in the door to Alonso M.'s bedroom.  Mother said that Father also broke the bathroom door.  Mother stated that she sleeps in the living room and that Alonso M. sleeps in the bedroom.  In addition, Mother said that Father retuned to the home two days before the interview and took a shower.  Mother also stated that there were no guns in the home.

On February 11, 2022, DCFS reviewed Los Angeles Police Department call logs for the family home.  A call log dated May 22, 2021 provided, " 'PR heard male and female arguing, then heard sounds of poss struggle and female crying.  PR does not know who lives in [the] apartment.' "

4

## II.     Removal, detention, and DCFS's petition

On February 15, 2022, DCFS sought and received removal of Alonso M. from the custody of both Mother and Father. DCFS placed him with the maternal grandmother.

On February 22, 2022, the trial court heard DCFS's request for detention. Both Alonso M. and Mother were represented by counsel. Father did not appear at the detention hearing. Both DCFS and Alonso M.'s counsel requested detention from the parents. Mother submitted on detention. In response to the trial court's inquiry, Mother indicated through counsel that she did not seek a restraining order. Father did not appear at the initial detention hearing and was arraigned at a later hearing the same day. The trial court ordered Alonso M. detained from both parents.

In its petition, DCFS alleged that domestic violence from both parents in the child's presence violated Welfare and Institutions Code section 300, subdivisions (a) and (b).[1] DCFS also alleged that Mother failed to protect the child from domestic violence, creating another basis for jurisdiction.

## III.    Jurisdictional and dispositional report

DCFS completed a report for the jurisdictional hearing, and interviewed Alonso M. again. According to him, he woke up to his parents yelling on the day of the incident. He saw Mother crying and said, " 'My mom was crying because she didn't want to fight anymore.' " Alonso M. saw a bite mark on Mother's neck and on Father's chin. Mother asked him to call 911, but he did not because he did not want Father going to jail again. Regarding the choking, he said, " 'I thought that he did but

---

[1]     All further statutory citations are to the Welfare and Institutions Code.

I don't think he did. . . . I was asleep and I woke up to them yelling. He wasn't choking her. I told him to stop because he had her phone.'" Father punched and broke the television, but Alonso M. denied seeing Father do it. Father had broken televisions previously. There was no prior domestic violence, and he said he had not seen Father hit or push Mother. By speaking to the social worker, he was worried that his parents would get in trouble and Father would get arrested again.

With regard to guns, Alonso M. stated that Father grabbed a gun, put it in his pocket and left the house. Alonso M. said the gun had no bullets because he hid the clip as he knew Father would hurt someone. He also said that he did not know how many guns were in the house and he just said a "random number."

DCFS also interviewed Mother for the jurisdictional report. As Mother reported, she has been in a relationship with Father for 10 years. They had disagreements but there had been no physical altercations. Regarding the incident, she and one of Father's friends bailed Father out of jail prior to Christmas in 2021. Father was uncomfortable with how friendly his friend was with Mother, and the parents argued. Mother said that Father is " 'very protective of who I speak with.'" In addition, the argument was in the early morning, and Alonso M. came out of his room. She was "spacing out" which made her son worried, and Alonso M. asked Father to call an ambulance when she was spacing out. Father said that he would call 911 to show Alonso M. that Mother was doing fine. Father did not strangle her, did not push her, did not shove her, and did not bite her. She did not bite Father. She had a scratch on her neck because her dog got its paw stuck on her necklace and pulled it. She also said that

Father releases his anger by hitting things. He punched the television on the day of their argument, and he punched the closet door the previous year. She and Father argue about Father talking to other women or getting arrested. There were no guns in the home during the incident. She was still in a relationship with Father, and they planned to get their family back together. She said that she did not live with Father as she was informed they could not live together.

DCFS also spoke to Father for the jurisdictional report. Father said he had a verbal disagreement with Mother and denied that any physical conflicts took place. Father said he had been in a relationship with Mother for 10 years and there had been no domestic violence. Regarding the incident, Father said he and Mother had a verbal disagreement where he raised his voice, but both of them calmed down. He denied any biting or bite marks. He said that Alonso M. was tricked by the school therapist to disclose information. He further indicated that Alonso M. has a creative imagination, which explains why his son was worried about the incident. He also denied having any guns and said that Mother had a gun that she keeps locked in a safe in her bedroom.

DCFS interviewed the maternal grandmother, and she did not suspect any domestic violence between Mother and Father. The maternal grandmother said the parents have not argued in her presence, and she had seen no suspicious marks or bruises on Mother.

DCFS also spoke to a maternal uncle. He said he had contact with Mother and Alonso M. almost daily. He did not suspect any domestic violence. He also said that he had not seen any suspicious marks or bruises on Mother.

DCFS interviewed Mother's friend of four years. She had no knowledge of any domestic violence.

The jurisdictional report quoted from a police report. In the police report, which was generated in response to the incident where Mother and Father had a conflict, Father denied any domestic violence. Alonso M. said that he woke up to his parents arguing and went to his parents' bedroom. He saw Father standing and Mother laying on the bed. He said Father left the home, returned home, and his parents reconciled. Mother denied any domestic violence. She said she had an argument with Father and that Alonso M. only saw the aftermath of the argument, which included a broken door.

DCFS offered both parents community referrals regarding potential services.

## IV. Jurisdictional and dispositional hearing

On April 13, 2022, the trial court presided over the jurisdictional hearing. The trial court provided the parties with a tentative ruling to begin the hearing, explaining that the court was inclined to sustain the allegation under section 300, subdivision (b), regarding domestic violence while dismissing the domestic violence allegation under subdivision (a). DCFS asked the court to sustain the petition in its entirety as did Alonso M.'s counsel. Counsel for Father and Mother both asked the trial court to dismiss the petition in its entirety. No party raised any objection under section 355. Consistent with its tentative, the trial court dismissed the domestic violence count under section 300, subdivision (a), as it found that no firearm was involved. The court sustained the domestic violence count under section 300, subdivision (b), with regard to Father, explaining, "I think it is crystal clear, based upon Alonso's statements, that father did

cause violence on mother, [] both on that occasion and on previous occasions as well." The trial court amended the sustained allegation and removed any reference to Father choking Mother, finding that the record was unclear on that point. The trial court also removed any references to guns in the sustained allegation. For Mother, the court amended the charge to find that Mother failed to protect Alonso M. from Father's domestic violence, and removed any finding that Mother engaged in domestic violence. In summary, the trial court found that Father engaged in domestic violence and that Mother failed to protect Alonso M. from that domestic violence.

For the dispositional hearing held on the same day, DCFS and Alonso M.'s counsel asked the court to remove Alonso M. from the parents' custody. Both Mother and Father requested that the trial court place Alonso M. in their custody. The court removed Alonso M. from his parents explaining, "The court finds removal is necessary because of the incident on December 28 of 2021, as well as the other multiple incidents of violence that were reported by Alonso that could have resulted in Mother's serious injury or even death."

## DISCUSSION

### I. The trial court properly asserted jurisdiction over Alonso M.

The juvenile court's jurisdictional findings under section 300 must be made by a preponderance of the evidence. (§ 355, subd. (a).) On appeal, we review jurisdictional orders for substantial evidence. (*In re D.C.* (2015) 243 Cal.App.4th 41, 55.) We view the record in the light most favorable to the juvenile court's determinations, drawing all reasonable inferences from the evidence to support the court's findings and orders. (*In re I.J.*

9

(2013) 56 Cal.4th 766, 773 (*I.J.*).)  The pertinent question is whether substantial evidence supports the finding, not whether a contrary finding might have been made.  (See *In re T.W.* (2013) 214 Cal.App.4th 1154, 1162.)  Issues of fact and credibility are the province of the juvenile court, and we neither reweigh the evidence nor exercise our independent judgment.  (*I.J.*, at p. 773.)

It is well-settled that exposing a child to domestic violence is a basis for dependency jurisdiction.  (*In re E.B.* (2010) 184 Cal.App.4th 568, 576.)  This is true because children face physical danger and can be injured accidentally when one parent engages in domestic violence against another.  (*Ibid.*)

Here, there is substantial evidence to support the trial court's finding that Father engaged in domestic violence that provided a basis for jurisdiction.  During the primary domestic violence incident at issue, Alonso M. stated that Father bit Mother, and that she bit him back.  Alonso M. stated that he saw bite marks on Mother's neck and Father's chin.  Mother also stated she had a scratch on her neck, but said it was caused by her dog.  In addition, Mother corroborated that this was a domestic violence incident where Father grabbed her before letting her go when DCFS initially interviewed her.  More generally, Alonso M. also stated that he saw Father push Mother two times, which supports the trial court's determination that the domestic violence was not an isolated event.  Similarly, he also stated that Father punched things when he gets upset, including breaking a television.  Mother and Father also said that Father punches household items.

In addition, a police department log from May 22, 2021, notes that the person calling police heard a male and a female arguing and heard sounds of a possible struggle in the family

home. Mother also described Father's controlling behavior by indicating that Father is " 'very protective of who I speak with.' " Even discounting the evidence in the record regarding Father choking Mother and Father using a gun to threaten Mother because the trial court discounted that evidence, the record contains evidence of multiple incidents of physical abuse and at least one time that Mother had visible physical injuries. Because Alonso M. saw the domestic violence, he was in harm's way. This record is an appropriate basis for jurisdiction. (*In re E.B.*, *supra*, 184 Cal.App.4th at p. 576.)

Father urges us to consider evidence contradicting Alonso M.'s summary of the domestic violence. While it is true that Father denied domestic violence and that Mother mostly denied domestic violence, the trial court determined that Alonso M.'s statements regarding Father's spousal abuse were credible. Similarly, while Alonso M.'s statements were not entirely consistent, the trial court determined that his statements regarding the domestic violence were entitled to weight. We do not disturb the trial court's credibility determinations on appeal. (*I.J.*, *supra*, 56 Cal.4th at p. 773.)

In addition, Father argues that Alonso M.'s statements are hearsay and cannot be a basis for jurisdiction under section 355, subdivisions (c)(1) and (d). Under section 355, subdivision (c)(1), "If a party to the jurisdictional hearing raises a timely objection to the admission of specific hearsay evidence contained in a social study, the specific hearsay evidence shall not be sufficient by itself to support a jurisdictional finding or any ultimate fact." As the code provides, a trial court need only apply section 355, subdivision (c)(1), when a party raises a timely objection at the hearing. Here, no party raised a timely objection during the jurisdictional hearing, therefore, section 355, subdivision (c)(1),

11

was inapplicable in the trial and is equally inapplicable in this appeal. Father also cites to section 355, subdivision (d), but that subdivision relates to any party's right to challenge the veracity of hearsay evidence and does not establish any legal error either. By failing to raise it in the trial court, Father waived the only potentially viable argument under section 355, subdivision (c)(1).

Finally, DCFS requests judicial notice of a subsequent minute order from the trial court, where Alonso M. was returned to Mother's custody. While this request is unopposed, this ruling does not relate to mootness, an exception to the general rule that appellate courts should not consider facts developed after the trial court's ruling on appeal. (*In re M.F.* (2022) 74 Cal.App.5th 86, 110, review den. Apr. 27, 2022.) Here, because DCFS does not point to an exception which would allow us to consider this order, we apply the general rule that postappeal facts are not germane to our consideration and deny the request. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.)

## II. Substantial evidence supports the removal order

Before the juvenile court may order children physically removed from their parents' custody, it must find by clear and convincing evidence that the children would be at substantial risk of harm if returned home and there are no reasonable means by which they can be protected without removal. (§ 361, subd. (c)(1).) "When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011–1012.) We must view the record in the light most favorable to the prevailing

12

party, and defer to the trial court's credibility determinations and factual findings. (*Ibid.*)

"In determining whether a child may be safely maintained in the parent's physical custody, the juvenile court may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention." (*In re D.B.*(2018) 26 Cal.App.5th 320, 332.) "A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re T.W.*, *supra*, 214 Cal.App.4th at p. 1163; accord, *In re D.B.*, at p. 328.)

Here, the same evidence that supported the juvenile court's jurisdictional finding under section 300, subdivision (b), also supported its removal order. (§ 361, subd. (c)(1); see *In re D.B.*, *supra*, 26 Cal.App.5th at p. 332 [" 'jurisdictional findings are prima facie evidence the minor cannot safely remain in the home' "].) The record supports the trial court's determination that Father attacked Mother more than once, and that Alonso M. witnessed the violence. Even under the more rigorous standard for removal, there was sufficient evidence for the trial court to conclude that Alonso M. could not be safely placed in Father's care because of the potential that Alonso M. would suffer physical injury. (*In re T.W.*, *supra*, 214 Cal.App.4th at p. 1163.) In addition, Father continues to deny that he physically abused Mother which increases the possibility of the violence recurring. (*In re V.L.* (2020) 54 Cal.App.5th 147, 156.) Father also took no

13

remedial measures, such as participating in programs, to ameliorate the risk of potential harm to Alonso M. (*Ibid*.)

III. **The trial court properly determined that reasonable efforts were made to prevent removal**

The court must determine "whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home" and "shall state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).)

Father asserts that DCFS made no reasonable efforts to prevent removal, but the record provides otherwise. DCFS asked Mother about whether she would apply for a restraining order against Father, and offered Mother information regarding restraining orders. The trial court also inquired about this possibility at the detention hearing. Mother did not pursue a restraining order against Father. One of the reasons for a restraining order in the dependency context is that domestic violence is less likely to reoccur if the parents are separated by an enforceable legal order. The parents seemed to make some progress towards this intermediate goal as Mother claimed that Father moved out. Even on this front, however, there was evidence in the record that Father continued to visit the family home. With regard to potential programs, DCFS offered both parents community referrals. At the dispositional hearing, however, Father had not enrolled in anger management classes or any other services. In addition, Father continued to deny the domestic violence. Here, DCFS offered the parents services and encouraged them to live separately while they engaged in programs to ameliorate potential risks to Alonso M. This establishes substantial evidence of reasonable efforts to prevent removal.

14

Father's reliance on *In re Ashly F.* (2014) 225 Cal.App.4th 803 and *In re Henry V.* (2004) 119 Cal.App.4th. 522 is misplaced. Regarding *In re Ashley F.*, the mother there completed a parenting program and had exhibited progress in ameliorating the risk of future abuse at the dispositional hearing. (*Id.* at p. 810.) Similarly, in *In re Henry V.*, the social worker conceded that the mother was taking advantage of program services by the time of the hearing. (*Id.* at p. 529.) Moreover, the physical abuse of the child took place a single time in *In re Henry V.* (*Ibid.*) Here, in contrast, Father has engaged in no services and committed multiple acts of domestic violence. As a result, the court committed no error here.

## DISPOSITION

The orders are affirmed.

VIRAMONTES, J.

We concur:


STRATTON, P. J.


GRIMES, J.

15